IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 15-29 |
| | ) | |
| ORLANDO BURT | ) | |

O P I N I O N

DIAMOND, D.J.

On February 10, 2015, defendant Orlando Burt was charged in a one-count indictment with possession of a firearm by a convicted felon on or about August 15, 2014, in violation of 18 U.S.C. §922(g)(1). Presently before the court are the following pretrial motions filed by defendant: (1) Motion to Suppress Evidence (Document No. 31); (2) Motion for Discovery (Document No. 28); (3) Motion to Dismiss the Indictment on Jurisdictional Grounds (Document No. 29) and (4) Motion to Compel the Government to Provide Defendant with a Statement of Uncharged Misconduct Evidence (Document No. 30). The government filed an omnibus response to defendant's motions, see Document No. 34, and a hearing on defendant's suppression motion was held on November 18, 2015.

For the reasons stated herein, defendant's motion to suppress and motion to dismiss the indictment both will be denied, and his other pretrial motions will be granted in part and denied in part.

## I.     Background

Sergeant Joseph Lewis, Detective Mark Goob and Detective Andrew Baker of the Pittsburgh Bureau of Police testified at the suppression hearing. Their testimony establishes the facts that follow.

Sergeant Lewis testified that he previously was a member of the Narcotics Impact Unit tasked with patrolling "hot spots" around the city of Pittsburgh, which he described as areas known for drug trafficking and shootings. In connection with his duties, Sergeant Lewis has had training in identifying individuals who illegally carry concealed firearms.

On August 15, 2014, Sergeant Lewis along with Detectives Goob and Baker were on patrol in an unmarked police vehicle[1] in the Hazelwood section of Pittsburgh, which Sergeant Lewis classified as an area with multiple "hot spots." As the officers drove on Glenwood Avenue, they observed a tractor trailer parked on the right side of the road facing their vehicle as they approached. The tractor trailer was parked near a grassy area where they saw defendant standing with three other males. Sergeant Lewis testified that as the police vehicle approached the area, defendant's body stiffened and he backed away from the group in a rigid manner and toward the tractor trailer. Sergeant Lewis explained that the police pulled over because defendant separated from the group as they drove down the street, which appeared to be suspicious. Sergeant Lewis and Detectives Goob and Baker all testified that they saw defendant back away from the group of men, reach into his waistband area, pull out a gun, crouch down and place it under the tractor trailer and return to the group. Sergeant Lewis explained that he did not actually see defendant lay the

_____

[1]Detective Goob testified that the officers were driving an Impala automobile, which is commonly known in the community as a police vehicle even though it was unmarked.

AO 72
(Rev. 8/82)

gun on the ground, but he saw defendant pull the gun from his waistband, and then he saw defendant get up from a crouching position after placing it under the tractor trailer.

After Sergeant Lewis exited his vehicle and announced he was a Pittsburgh Police officer, he went to the spot where he saw defendant place the gun and he recovered it. Sergeant Lewis testified that only seconds passed from the time he saw defendant with the gun in his hand until he recovered it.

Detectives Goob and Baker detained defendant, and Detective Goob asked defendant if he had a permit to carry a concealed firearm. Although defendant did not immediately answer, at some point defendant indicated he did not have a permit. Detective Goob handcuffed defendant and placed him under arrest for carrying a concealed weapon without a permit in violation of Pennsylvania law. The charge subsequently was amended to person prohibited from carrying a firearm when the police discovered that defendant had a criminal history.

## II.   <u>Motion to Suppress Evidence</u>  (Document No. 31)

Defendant argues that the evidence seized during his encounter with Pittsburgh Police officers on August 15, 2014, should be suppressed because it was obtained in violation of the Fourth Amendment for the following reasons: (1) the decision to accost him was without probable cause; (2) his arrest was warrantless and without probable cause and does not fall within any exception to the warrant requirement; and (3) the seizure of evidence following his arrest was warrantless and without probable cause and the police conduct does not fall within any exception to the warrant requirement. Defendant's motion contains little else beyond these general assertions that the police conduct violated his Fourth Amendment rights, and his counsel did not offer any

3

argument at the hearing to support his assertion that suppression is warranted.

Contrary to defendant's position, the actions of the police were lawful and no Fourth Amendment violation occurred in this case. As an initial matter, the police observed defendant reach into his waistband area and pull out a gun, which he then placed under the tractor trailer parked on the side of the road. An item a defendant discards is considered abandoned for Fourth Amendment purposes. See United States v. Johnson, 432 Fed. Appx. 118, 121 (3d Cir. 2011) (a handgun that defendant discarded during a foot pursuit was abandoned). An individual does not have a reasonable expectation of privacy in abandoned property, thus defendant cannot mount a Fourth Amendment challenge regarding the firearm he discarded. See United States v. Fulani, 368 F.3d 351, 354 (3d Cir. 2004) (citing Abel v. United States, 362 U.S. 217, 241 (1960)). Because there was no event which triggered Fourth Amendment protection with respect to the firearm, defendant's motion to suppress evidence must be denied.

Furthermore, defendant's warrantless arrest did not violate the Fourth Amendment. In order for a warrantless arrest to be lawful, it must be based on probable cause. United States v. Watson, 423 U.S. 411, 417-24 (1976) (holding that probable cause for a warrantless arrest exists when the officer has reasonable grounds to believe that an offense has been or is being committed); see also Beck v. Ohio, 379 U.S. 89, 91 (1964) (probable cause exists whenever circumstances within a police officer's knowledge are sufficient to warrant a prudent person to conclude that an offense has been committed by the person being arrested).

Here, defendant backed away from the group of men as the police drove down the street in a recognizable vehicle, pulled a firearm from his waistband and placed it under the tractor trailer. Defendant's actions provided the officers with ample probable cause to believe that he illegally

4

possessed the firearm, thus justifying the warrantless arrest. See Johnson, 432 Fed. Appx. at 121 (an individual's flight from police and discarding firearm during flight provided police with probable cause to arrest without a warrant).

## III.    **Motion for Discovery (Document No. 28)**

Defendant has filed a motion seeking discovery of various categories of information, including, inter alia, requests for exculpatory material and impeachment material related to any prospective government witnesses.

Generally, governmental disclosure of evidence in criminal cases is governed by Federal Rule of Criminal Procedure 16(a). The United States Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas delineated in Rule 16(a)(1) "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." United States v. Ramos, 27 F.3d 65, 68 (3d Cir. 1994). As a general matter, these other areas are limited to the Jencks Act, 18 U.S.C. §3500, and materials available pursuant to the "Brady doctrine."[2] Id.

In response to defendant's discovery motion, the government has indicated it is aware of its obligations under the Brady doctrine and Rule 16. Accordingly, defendant's discovery motion and request for exculpatory evidence will be granted in part, and the government will be required to turn over all information falling under Rule 16(a) and the Brady doctrine to the extent that any

---

[2]Brady v. Maryland, 373 U.S. 83 (1963).

AO 72
(Rev. 8/82)

such information exists and has not already been provided to defendant.[3] To the extent defendant's discovery motion requests information that does not fall within the scope of Rule 16(a), Brady or the Jencks Act,[4] those requests will be denied.

As to the timing of the required disclosures, it is well settled that the government's obligations under Brady require it to disclose actual exculpatory evidence without undue delay. In contrast, Brady impeachment material ordinarily must be disclosed "in time for its effective use at trial." United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983). Therefore, should the government discover the existence of any exculpatory Brady evidence, such evidence must be disclosed to defendant forthwith. As to impeachment material, the Third Circuit encourages adherence to the long-standing policy of promoting early production of all types of Brady material "to ensure the effective administration of the criminal justice system." United States v. Starusko, 729 F.2d 256, 261 (3d Cir. 1984) (quoting Higgs, 713 F.2d at 44, n.6). Given the fact that this is a one-count felon in possession case, disclosure of Brady impeachment material five days prior to trial is

---

[3] The government states in its response that it is not aware of any exculpatory Brady material pertaining to defendant, but if any such material is discovered, it will be provided to defendant in time for him to make effective use of it at trial. In addition, the government states that the material requested under Rule 16 already has been provided to defendant.

[4] The Jencks Act provides that after a government witness testifies, and upon motion by the defendant, the government must produce "any statement ... of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. §3500(b). Pursuant to 18 U.S.C. §3500(a), "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." Accordingly, "the government has no obligation to produce Jencks material until the witness has testified." United States v. Maury, 695 F.3d 227, 248 (3d Cir. 2012). Although the government has no obligation to provide defendant with Jencks material until a witness testifies, the court will enter an order encouraging, but not compelling, the government to provide any Jencks material to the defense five days prior to trial. See Maury, 695 F.3d at 248 n.18 (recognizing that "[d]espite [§3500(a)], many federal prosecutors routinely turn over Jencks material a few days before the witness testifies").

AO 72
(Rev. 8/82)

sufficient to protect defendant's due process rights and to ensure that trial delay is avoided, and an order will be entered to that effect.

### IV.    Motion to Dismiss Indictment on Jurisdictional Grounds (Document No. 29)

Defendant has moved to dismiss the indictment on jurisdictional grounds. According to defendant, the government's evidence that the firearm charged in the indictment was manufactured outside of Pennsylvania and subsequently was discovered in Pennsylvania is insufficient as a matter of law to prove that defendant's alleged possession was "in or affecting interstate commerce," an essential element of a §922(g)(1) violation. See Jones v. United States, 529 U.S. 848 (2000); United States v. Morrison, 529 U.S. 598 (2000); United States v. Lopez, 514 U.S. 549 (1995). Thus, defendant argues that the indictment should be dismissed because the court lacks subject matter jurisdiction over this case.

However, as defendant has acknowledged in his motion, the Third Circuit has ruled that §922(g)(1) is constitutional as a valid exercise of the Commerce Clause. See United States v. Singletary, 268 F.3d 196, 204-05 (3d Cir. 2001); United States v. Gateward, 84 F.3d 670, 672 (3d Cir. 1996). The Third Circuit also has held that proof that a defendant possessed a firearm in a state other than the state in which it was manufactured is sufficient to establish the interstate nexus element for a violation of §922(g)(1). United States v. Shambry, 392 F.3d 631, 634-35 (3d Cir. 2004).

Defendant acknowledges that Singletary is the law of this Circuit and that he merely is raising the issue to preserve his jurisdictional claims should Scarborough v. United States, 431 U.S. 563 (1977), the holding underpinning the Singletary and Shambry cases, be overruled. As defendant

7

has conceded that his position is contrary to the current law, and there being no matter presently before the United States Supreme Court on this subject which would justify holding defendant's motion in abeyance, defendant's motion to dismiss the indictment on jurisdictional grounds will be denied. See United States v. Benjamin, 711 F.3d 371, 381 (3d Cir. 2013) (summarily rejecting argument that §922(g)(1) is unconstitutional where defendant recognized his arguments are foreclosed by Singletary).

V.    **Motion to Compel the Government to Provide Defendant with a Statement of Uncharged Misconduct Evidence (Document No. 30)**

Defendant seeks an order compelling the government to provide him with a statement of the nature, dates and places of occurrences of any offenses or acts of misconduct which the government will seek to offer in evidence at trial under Fed.R.Evid. 404(b) and/or evidence of any prior convictions under Rule 609.

Rule 404(b) requires the government to provide reasonable notice prior to trial of its intention to use evidence of other crimes, wrongs or acts for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. See Fed.R.Evid. 404(b)(2). According to the Rule, "[o]n request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and (B) do so before trial . . . ." Fed.R.Evid. 404(b)(2)(A) and (B).

The commentary to Rule 404(b) explains that other than requiring pretrial notice, no specific time limits are stated in recognition that what constitutes reasonable notice will depend on the circumstances of each case. Courts that have considered what constitutes "reasonable notice" have

8

concluded that notice of intent to use Rule 404(b) evidence seven to ten days prior to trial is sufficient. See United States v. Evangelista, 813 F.Supp. 294, 302 (D.N.J. 1993) (ten days); United States v. Alex, 791 F.Supp. 723, 728-29 (N.D.Ill. 1992) (seven days); United States v. Williams, 792 F.Supp. 1120, 1133 (S.D.Ind. 1992) (ten days). The government's response indicates it is aware of the notice requirement under Rule 404(b), but defendant has not shown that he is entitled to anything other than the "reasonable notice" required by the rule. Accordingly, the court will enter an order requiring the government to provide notice under Rule 404(b) seven days prior to trial, which is consistent with the case law interpreting the rule.

As for defendant's request under Rule 609,[5] the government only is obligated to provide "reasonable written notice" of its intent to use evidence of a conviction more than ten years old. See Fed.R.Evid. 609(b)(2). At this time, the government has not identified any evidence it intends to offer under Rule 609, thus defendant's request will be denied as moot. However, to the extent the government later decides to offer evidence that falls under Rule 609, it must provide defendant with "reasonable written notice" of its intent to use evidence of a conviction more than ten years old.

---

[5] Rule 609(a)(1)(B) allows, for the purpose of attacking the credibility of an accused, the admission of evidence that the accused has been convicted of any crime punishable by death or imprisonment in excess of one year if the court determines that the probative value of admitting that evidence outweighs the prejudicial effect to the accused. Rule 609(a)(2) further provides that evidence that any witness has been convicted of a crime involving dishonesty or false statement shall be admitted regardless of punishment.

AO 72
(Rev. 8/82)

## VI. Conclusion

For the foregoing reasons, defendant's motion to suppress evidence and motion to dismiss the indictment both will be denied, and his other pretrial motions will be granted in part and denied in part as explained herein. An appropriate order will follow.

Gustave Diamond
United States District Judge

Date: December 21, 2015

cc:     Conor Lamb
        Assistant U.S. Attorney

        W. Penn Hackney
        Assistant Federal Public Defender

AO 72
(Rev. 8/82)